Minter v Minter (2006 NY Slip Op 50640(U))

[*1]

Minter v Minter

2006 NY Slip Op 50640(U) [11 Misc 3d 1081(A)]

Decided on February 1, 2006

Family Court, Monroe County

O'Connor, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 1, 2006

Family Court, Monroe County
REGINALD MINTER, Petitioner,
against
CYNTHIA MINTER, Respondent.
F892-93/05E

Reginald Minter, pro se (hearing and objection)
Cynthia Minter, pro se (hearing only)

Marilyn L. O'Connor, J.
Petitioner Reginald Minter filed a petition on June 28, 2005 to have his child support reduced based on his current situation, to reflect a change in circumstances for the years 2000 to 2005, and to have child support for his 18-year-old college student son temporarily stopped until he obtained employment. The respondent opposed any reduction. After a hearing, the Support Magistrate issued a decision on November 29, 2005 dismissing his modification petition with prejudice after full consideration of the merits and continuing the prior order of support, as previously adjusted with a cost of living adjustment to require him to pay $238 biweekly. Petitioner filed objections to the Findings of Fact, Conclusions of Law and Order. Respondent has not filed rebuttal. For the reasons set forth below, the determination of the Support Magistrate is confirmed.
The Petitioner sought a downward modification of child support from $238 biweekly based on his claim that a change in his circumstances merited a downward modification. The change of circumstances testified to by Petitioner was that he had been terminated from his good post office job, lost his marriage and almost lost his life as a result of a very bad drug addiction problem in 2000. Since then successfully completed a faith based rehabilitation program, stayed with that program another year to help other men become rehabilitated, and then pursued a good opportunity to get an education. He received an associate's degree in May of 2005 in architectural technology, and obtained grant money for a four-year degree from Lancaster Bible College, where he planned to study elementary education and Bible studies. He also testified that as of the time of the hearing he had just secured employment, for 10 hours per week. In the prior [*2]5 years petitioner, a 47-year-old man at the time of the hearing, testified he had made perhaps a total of $10,000. He was proud to testify that he had faithfully sent one-half of his very limited income to the child support enforcement agency over the last several years, while preparing himself for a future job at which he will hopefully earn as much as he did as a US Post Office employee.
In the case at bar, credibility was not really a significant issue. What was at issue was what is the appropriate consequence to the given facts, as stated by petitioner, with respect to his drug addiction, recovery, and course of limited work and full-time education after his recovery. The Support Magistrate concluded that petitioner's employment situation was a direct result of voluntary decisions made by petitioner, and thus deemed any impairment of his ability to pay support self-imposed. He found that the proofs established that from 1996-2000 petitioner had an average gross income of $32,840 per year, but from 2001 to the date of the hearing, his income had been below $4000 per year. He found that there was no clear showing by petitioner that he was not able to work and regain his prior level of earnings. He found that indeed he had chosen to undergo and extend full time college studies rather than return to full time employment. The Support Magistrate further concluded that if he could pursue academic interests full time, he alternatively could work full time. Citing Gaudu v Gaudu (171 Misc 2d 511 [1997]) as legal precedent holding that the loss of employment due to substance abuse or addiction' can be considered a self-imposed change of circumstances, the Support Magistrate dismissed the petition. Gauda actually involved alcoholism. In that case, while refusing to reduce child support, the court refused to conclude that alcoholism would either always or never justify a reduction of child support. The Family Court in Gauda said,
Alcoholism is a recognized disease. It is also recognized as one which is treatable, however. Here the petitioner not only testified that it was a relapse that resulted in his losing his job, but that he was told by his employer that if he sought treatment he could keep his position. He elected not to do so. While this court commends the petitioner for again returning to sobriety, it cannot, under the facts of the case, excuse his "relapse" as being beyond his control, any more then it could excuse him for driving while under the influence of alcohol.

 Unquestionably there was a substantial change of circumstances in this case, but the critical issue is whether the change of circumstances should be deemed self-imposed, despite the arguably disease nature of drug addiction, so that no reduction of child support should be allowed. Gaudu (supra) cites Matter of Knights v Knights (71 NY2d 865), in which the Court of Appeals stated that "[i]n exercising its discretion whether to modify a child support order, Family Court may consider various factors, including . . . whether a supporting parent's claimed financial difficulties are the result of that parent's intentional conduct." The more specific principle applicable here, of course, is that when there is a loss of employment and the consequential inability to provide support resulting from one's own action or inaction, there is no entitlement to a downward modification. (Cf.., Hickland v Hickland, 39 NY2d 1, cert. denied 429 US 941, regarding maintenance, holding that a husband is under an obligation to use his assets and earning powers if they are required to meet his obligation to maintain the marital standard of living; Stempler v Stempler, 200 AD2d 733, 734 [2d Dept. 1994], denying a maintenance and child support reduction because there was ample evidence in the record that the alleged reversal [*3]of the defendant's financial condition was created by his decision to abandon the practice of law and engage in real estate speculation and development, and there was no evidence that the defendant "made a good faith effort to obtain employment commensurate with his qualifications and experience"; Matter of Davis v Davis, 197 AD2d 622 [2d Dept., Oct. 18, 1993]), where the Second Department held that Family Court did not improvidently exercise its discretion in concluding that the appellant's earning potential was far greater than the amount he was reportedly earning as a seasonal landscaper, where there was no evidence in the record that the appellant made a good faith effort to obtain employment commensurate with his qualifications and experience; In the Matter of Ludwig v Reyome, 195 AD2d 1020 [4th Dept 1993]), where the court would not reduce child support because the respondent voluntarily quit his job to avoid his support obligation and willfully violated the court's subsequent enforcement order by failing to undertake an adequate employment search; Matter of Moore v Moore, 115 AD2d 894 [3rd Dept 1985], where the court held to permit a downward modification of support would be tantamount to requiring respondent's three children to subsidize their father's precarious new business venture.) No case could be found involving loss of work due to drug abuse/addiction, and surprisingly there appears to be only the one case, Gauda, on alcoholism and none on drug addiction's impact on the child support obligation.
The court has been able to find two cases involving drugs and child support. In Crystal v Corwin (274 AD2d 683 [3d Dept 2000]) a non-support-paying father lost his license to teach due to disciplinary proceedings involving possession of illegal drugs, not drug addiction. The Third Department held:
. . . we find no merit to respondent's claim that Family Court should have granted his application for downward modification of the support order. We note that a party who causes his or her own inability to pay support is not entitled to downward modification (see, Matter of Ludwig v Reyome, 195 AD2d 1020, 1021). Here, respondent was responsible for the circumstances leading to the loss of his teaching license and voluntarily left his brief employment at the manufacturing facility [claiming the work hurt his back]. Furthermore, he has not put forth any persuasive proof that he has engaged in reasonable and sincere efforts to secure employment so that he could contribute to his child's support. Consequently, his petition for downward modification was properly dismissed.
Still, Crystal (supra) was not an addiction case. Snyder v Snyder (277 AD2d 734 [3rd Dept 2000]), appears most helpful. There the Third Department affirmed a willful violation finding against a father who failed to pay child support and on appeal relied exclusively on his history of cocaine dependence and alcohol abuse as impediments to maintain regular employment. The court held, "To the extent that this explanation is even properly considered (cf., Matter of Crystal v Corwin, 274 AD2d 683, 684), it neither explains nor justifies respondent's decision to place his own alleged expenses ahead of his obligation to support his son (see, Matter of Powers v Powers, [86 NY2d 63], at 70). The decision of the respondent in the case at bar to put his own education ahead of his obligation to support his son is equally unjustified.
Arguably alcoholism is recognized as a disease in modern culture, but drug addiction is not necessarily seen in the same light. Perhaps this is because it often involves the use of illegal drugs (or the abuse of legal drugs, often through illegal sales thereof). Thus, becoming a drug [*4]addict generally requires a choice to commit an illegal act while becoming an alcoholic does not require breaking the law. Assuming arguendo that Petitioner was for a time unable to work because of the "illness" of drug addiction, it does not follow that Petitioner is entitled as a matter of law to a downward modification of child support during such period, let alone during the period after his rehabilitation.
Petitioner did not cite any authority for his proposition that he should not pay child support because he is doing well by being drug-free for 5-years and has a sensible plan for getting a college education so that he can regain his ability to earn a good living. In fact, he did not offer any evidence that he currently lacks the ability to earn a good living. Moreover, it is ironic that petitioner, who argues he cannot support himself since he is in college, argues in effect that his son is emancipated, since he attends a college far from home and his education is financed through financial aid and by the boy's mother. Petitioner seeks to be absolved of all or virtually all responsibility for his son, even though he obviously could work full-time now and go to school part-time instead of vice-versa. Clearly, he has the capacity to pay child support.
For courts to allow substance abusers or alcoholics to reduce child support for accelerating their use to the point of job loss would be to reward them for their serious mistakes [FN1], and in the case of drug addiction, for breaking the law. The Petitioner here took care of his responsibilities for quite some time before losing the ability to do so. It is in the interests of justice to apply to these facts the general rule against relieving a parent of child support obligations because of a self-imposed financial situation. 
This case is not like Andre v Andre (78 AD2d 974), where an engineer left his higher paying job to work as a college professor, and the change was a reasonable one under the circumstances. The proof showed the payor/father was an engineer who was probably about to lose his job due to a change in company ownership. Thus, the court found that he took a reasonable step to preserve his ability to support himself and his dependents by becoming a professor. Even though his new job as a professor paid less, it was far better than no job. And in Andre the sale of the employer's company and pending loss of the man's job was completely beyond his control, while in the case at bar it was the petitioner's actions which cost him his job with an extremely stable employer. In the years since his rehabilitation, petitioner's continuing desire to take care of his own needs by getting a higher education is not simply the noble effort petitioner seems to want the court to find it to be because it means he does not have a reasonable income now with which to support his son.
By denying a reduction or elimination of child support, petitioner is not being penalized for his efforts to get well. He is being held to his pre-existing ability and his undeniable responsibility to act in a manner so as to be able to support his son. His objection's claim that he has been sending child support monies to the best of his ability since he left the postal service until the time of his objections is simply not true. He has had much greater earning capacity than he has utilized ever since he became clean and sober several years ago. While petitioner can be [*5]commended for staying off drugs, and for helping others get off drugs and stay clean, nonetheless according to his own testimony for several years he has been doing what he wants, in his own interest, with little regard for his son's needs, and with the expectation that his ex-wife will provide for their son, particularly since she has remarried. The responsible behavior of one parent does not authorize the irresponsible behavior of the other. Nor does the existence of a responsible stepfather mean a biological father is freed of his duties as a father.
The petitioner's other arguments relating to money his son could have received from his paternal grandmother and scholarships for his college education are not relevant to the child support issues of this case. Furthermore, it would be legally improper to order, as petitioner requests, that the child support paid by petitioner go directly to the parties' son instead of to his respondent mother, upon whom the boy still depends.
For the reasons set forth above, the legal conclusion of the support magistrate that there is no basis for a downward modification of child support must be affirmed.
NOW THEREFORE it is
ORDERED that the petitioner's objections are dismissed and the Findings of Fact, Conclusions of Law, and Order of the Support Magistrate are confirmed.
Signed , 2005 at Rochester, New York.
E N T E R :
_________________________________ HON. MARILYN L. O'CONNOR
 Family Court Judge
NOTICE: Pursuant to section 1113 of the family court act, an appeal must be taken within thirty days of receipt of the order by appellant in court, thirty-five days from the mailing of the order to the appellant by the clerk of the court, or thirty days after service by a party.
Mailed: Reginald Minter, Cynthia Minter

Footnotes

Footnote 1: Cf. Matter of Sheila G., 94 AD2d 731, where a father's parental rights were terminated over his objections because of his long-standing drug and alcohol abuse problems, his inability to cope with them despite financial means, and his unsuccessful participation in a number of rehabilitation programs.