Doe v Doe (2006 NY Slip Op 50776(U))

[*1]

Doe v Doe

2006 NY Slip Op 50776(U) [11 Misc 3d 1089(A)]

Decided on April 24, 2006

Family Court, Monroe County

O'Connor, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 24, 2006

Family Court, Monroe County
Jennifer Doe, Petitioner,
against
Joe Doe, Respondent.
F 10483-05

Jennifer Doe by and with Mary Teator, Esq. (hearing and objection
Joe Doe (pro se at hearing, by James S. Hinman, Esq., on objection)

Marilyn L. O'Connor, J.
The Judgement of Absolute Divorce between the partes, dated July 29, 2003, reserved petitioner's right to child support for the parties' three children as respondent was incarcerated. Accordingly, after respondent was released from prison and was again working, petitioner Jennifer Doe filed a petition, on August 17, 2005, for de novo child support. After a hearing, the Support Magistrate issued a decision, dated February 9, 2006, requiring the respondent father to pay $50 per week in basic child support and $41 per week towards child care costs, for a total of $91 per week, effective August 17, 2005 and commencing February 17, 2006. The Support Magistrate also ordered that Medicaid should continue for the children, subject to the parents providing health insurance for them if such coverage should be available to either parent via employment at a reasonable cost. Future uninsured health care costs were divided on a prorated basis of 46% for the father and 54% for the mother. Respondent filed objections to the [Corrected] Findings of Fact and Conclusions of Law and Order. Petitioner filed rebuttal. For the reasons set forth below, the determination of the Support Magistrate is confirmed.
First, the court must respond to a procedural issue raised by respondent's attorney within his client's objection. The attorney argues that he had numerous difficulties obtaining a copy of the hearing and when he finally got one, he "had trouble listening to the hearing because the volume is extremely low". Thus he asserted in the objection that he was "reserving the right to supplement these objections if a further review of the hearing should reveal additional basis for objections thereto." There is no basis for reserving indefinitely the right to supplement [*2]objections. Family Court Act, section 439, has a very specific time table for filing objections (i.e., 30 to 35 days from service of the decision, depending on the method of service). Furthermore, the Court obtained and listened to the digital recording of the hearing without any problem. If anything, the volume was too loud on the normal setting. If an attorney discovers a technical problem it should be resolved immediately by contacting the court, not claiming a non-existent right to supplement objections. At any rate, more than a month has passed since the attorney filed his objections, and he has not supplemented them. Thus, the Court will decide the objection based on the March 7, 2006 "Objections to Order of Support Magistrate" without any "right" to file supplemental objections being recognized.
The father's objection is that, "The Support magistrate's conclusion that Respondent failed to adduce proofs demonstrating that assessment of [the presumptive support amount of $50 per week] would be unjust or inappropriate' is contrary to the facts testified to be [sic] Respondent." The respondent's attorney further argues that, "Although the Support Magistrate indicated consideration had been given to the required costs of therapy and medication, pursuant to his status as a registered sex offender and the terms of his release from federal custody, the decision indicates that these were not taken into account at all."
Respondent's attorney is mistaken. The implication of the objection is that $50 per week is the presumptively correct amount of child support as determined by the routine application of the child support formula i.e., 29% for three children multiplied by the respondent father's adjusted gross income of $15,519 as found by the court in this case. However, the decision when closely read does not indicate that the presumptively correct amount of child support pursuant to the formula (Family Court Act, § 413[1][b][3]) was $50 per week. Instead, to set the $50 per week child support amount the Support Magistrate cited on section 413(1)(k) of the Family Court Act the section which indicates "[w]hen a party has defaulted and/or the court is presented with insufficient evidence to determine gross income, the court shall order child support based upon the needs or standard of living of the child, whichever is greater." In fact, the presumptively correct amount of basic child support in this case pursuant to the formula, applied to the adjusted gross income found by the Support Magistrate, would have resulted in a basic child support amount of $86.55 per week for 3 children not $50 per week. The Support Magistrate's reasoning in reaching this determination is not clear, but the respondent father did get considerable relief from the formulaic presumptively correct amount of child support though apparently not as much as the father wanted. That the Support Magistrate also ordered $41 per week in day care costs, which brings the total to $91 per week only slight more than the $86.55 presumptively correct basic child support amount alone.
 The father was properly found to have weekly costs of $50 for Linden Oaks Sex Abuse Treatment Services, $114.24 per month for treatment with Dr. Berry and $25 per week for the co-pay for his prescribed drugs. He submits now and submitted at the hearing that the cost of his treatment and medications, which are conditions of his continued release, are slightly less than half of his monthly available income after FICA deductions, leaving him too little to live on. However, he conceded that his employer provides him with rent, a car and a cell phone but argued those regularly provided "perks" do not provide him with funds for child support, day care, or meeting his daily needs. The respondent father concluded that after his treatment and medication expenses, he has only $404 in available income, and after the $391.30 he is directed to pay monthly for child support and child care is taken out of his income, he has only $12.70 [*3]left. Finally, after required withholding, he concluded he has "no income whatsoever with which to meet his personal needs". With this point, the court disagrees, as set forth below.
 He also argues that he is "severely limited" as to where he can live and work due to his status as a registered sex offender. The court agrees with this point. However, the court finds that the respondent has only a 30-hour per week work week, and has provided no reason why he could not work more hours e.g., perhaps just a full 40-hour week, with his current employer. The respondent father further argues that Mrs. Doe's income was soon to increase from $385 per week to $675 per week, making the mother's pro rata portion of expenses closer to 75%, not 54%. Of course, decisions are not based on facts which may occur in the future, no matter how compelling they may seem. The mother's income at the time of the hearing was only $20,020 per year hardly a large income for a single mother with three children. Also, as the custodial mother testified, her day care costs would increase precipitously (from $90 per week to $800 per month) with the increase in pay, should she receive it, because she would no longer be eligible to have her day care subsidized. The court can only deal with new facts after they occur not in anticipation of what may occur, so this is all irrelevant to the Support Magistrate's determination and to this objection.
Of course, the courts do have the discretion to deviate from the presumptively correct amount of child support for reasons not specifically enumerated in the Family Court Act, due to factor 10, the catch-all factor of the Child Support Standards Act (Family Court Act,
§ 413[1][f][10]). However, no case law or other authority at all has been offered by the respondent's attorney, nor has any on point been found on the issue of whether the treatment costs of being a sex offender, as required or otherwise, should reduce a parent's support obligation. Furthermore, it seems highly unlikely that any court would find such a result equitable and thus rule in such a manner. There are actually surprisingly few cases even on the impact of the relatively commonplace problems of drug addiction or alcoholism on support obligations, and even they do not result in child support rulings favorable to non-custodial parents. 
Gaudu v Gaudu (171 Misc 2d 511 [1997]) is one of the very few such cases. Gaudu involved alcoholism. In that case, while refusing to reduce child support, the court also refused to conclude that alcoholism would either always or never justify a reduction of child support. The Family Court in Gaudu said,
Alcoholism is a recognized disease. It is also recognized as one which is treatable, however. Here the petitioner not only testified that it was a relapse that resulted in his losing his job, but that he was told by his employer that if he sought treatment he could keep his position. He elected not to do so. While this court commends the petitioner for again returning to sobriety, it cannot, under the facts of the case, excuse his "relapse" as being beyond his control, any more then it could excuse him for driving while under the influence of alcohol.

This court also held in Minter v Minter (2006 NY Slip Op 50640U, decided February 1, 2005), "For courts to allow substance abusers or alcoholics to reduce child support for accelerating their use to the point of job loss would be to reward them for their serious mistakes, and in the case of drug addiction, for breaking the law." This court in Minter denied a child support deduction due to financial circumstances resulting from a drug addiction. To allow Mr. Doe to avoid even his basic statutory child support obligation as a result of having been imprisoned for crimes resulting [*4]in his sex offender status would be to do the same to reward him for breaking the law.
Snyder v Snyder (277 AD2d 734 [3rd Dept 2000]) is also helpful by comparison. There the Third Department affirmed a willful violation finding against a father who failed to pay child support and on appeal relied exclusively on his history of cocaine dependence and alcohol abuse as impediments to maintain regular employment. The court held, "To the extent that this explanation is even properly considered (cf., Matter of Crystal v Corwin, 274 AD2d 683, 684),[FN1] it neither explains nor justifies respondent's decision to place his own alleged expenses ahead of his obligation to support his son (see Matter of Powers v Powers, [86 NY2d 63], at 70)."
Of course, implicit in Mr. Doe's argument is that his sex offender status is a result of a disease. Though no expert testimony was offered about the nature of Mr. Doe's problem, there was ample evidence that it is treated by therapy and drugs, like a disease. Of course, a person with such a severe problem has a duty to get help as soon as he/she recognizes the problem. The children of such a parent should not suffer because to date that parent's efforts have failed. To have children is to have responsibility for them. (See In re Bobbijean P., 2 Misc 3d 1011A; Matter of Anna E., 6 Misc 3d 1003A.)
Petitioner did not cite any authority for his proposal that he should pay little or no child support because his personal expenses are so high due to his sex offender status (or any other reason). In the case at bar, Mr. Doe, while claiming not to have even $50 per week for the support of his three children, according to his financial affidavit and his testimony, he manages to spend $90 per month on life insurance for which the beneficiary is his sister. Thus, he has put that superfluous expense ahead of his obligation to support his three sons. This is inexcusable, and the court will view that $90 as if it were available for child support. Furthermore, since his argument is that he has virtually nothing to live on, the fact that he apparently actually pays $90 per month for something of no value to him during his life leads the court to infer that he perhaps has undisclosed income which should have been reported at the hearing before the Support Magistrate. This seriously calls into question Mr. Doe's credibility.
In Matter of Knights v Knights (71 NY2d 865), the Court of Appeals stated that "[i]n exercising its discretion whether to modify a child support order, Family Court may consider various factors, including . . . whether a supporting parent's claimed financial difficulties are the result of that parent's intentional conduct." If they are, no reduction in child support is granted. In the case at bar, the issue is not modification of child support, but the establishing of child [*5]support. Of course, the same intentional conduct principle applies and this court concludes that Mr. Doe's financial difficulties are the result of his intentional conduct, and no further reduction in the child support as awarded which is less than the formula amount should be granted.
Petitioner also did not cite any authority for his apparent proposal that the costs to his employer of his apartment, car and cell phone should not be considered income imputed to him. This proposition directly ignores the law set forth in section 413 (1)(b)(iv)(B) of the Family Court Act, which expressly states, "meals, lodging, memberships, automobiles or other perquisites that are provided as part of compensation for employment to the extent that such perquisites constitute expenditures for personal use, or which expenditures directly or indirectly confer personal economic benefits" may be imputed as income at the court's discretion. This court, in its discretion most certainly imputes to Mr. Doe the rent paid for his apartment ($595 per month x 12 months = $7140). The Support Magistrate also imputed this as income. Respondent father stated gross income is $9360 per year ($180 per week x 52 weeks = $9360). These two items actual income paid plus rent together total $17,500 gross, and this total does not include any value for the use of a car and cell phone. While the Support Magistrate found that the respondent father's income is $16,805, and his adjusted gross income is $15,519, it would appear from the mathematics that his gross income is $17,500 and his adjusted gross is $16,161.25. His adjusted gross income would be even more if the personal use value for his car and cell phone were imputed, as they well should be. Thus, his presumptively correct child support amount if the formula were used is $86.55 per week, i.e., significantly more than the $50 per week for basic child support found by the Support Magistrate using Family Court Act
(§ 413[1][k]) and objected to by the respondent as if he had received no favorable consideration by the Support Magistrate.
As there has been no objection seeking to increase the child support amount as found by the Support Magistrate, no increase is in issue. The critical conclusion here is that the respondent should pay the child support ordered without any further reduction for expenses he incurs as the result of being on the sex offender registry for his illegal action.
The respondent father's other arguments have been considered and determined to be without merit.

NOW THEREFORE it is
ORDERED that the petitioner's objections are dismissed and the [Corrected] Findings of Fact, Conclusions of Law, and Order of the Support Magistrate are confirmed.
Signed April , 2006 at Rochester, New York.
E N T E R :
_________________________________ HON. MARILYN L. O'CONNOR,
Family Court Judge
NOTICE: Pursuant to section 1113 of the family court act, an appeal must be taken within thirty days of receipt of the order by appellant in court, thirty-five days from the mailing of the order to the appellant by the clerk of the court, or thirty days after service by a party.
Mailed: Jennifer Doe, Joe Doe, James L. Hinman, Esq., Mary E. Teator, Esq.
[*6]
Footnotes

Footnote 1: Cf. Crystal v Corwin (274 AD2d 683 [3d Dept 2000]), where a non-support-paying father lost his license to teach due to disciplinary proceedings involving possession of illegal drugs, not drug addiction. The Third Department held: ". . . we find no merit to respondent's claim that Family Court should have granted his application for downward modification of the support order. We note that a party who causes his or her own inability to pay support is not entitled to downward modification (see, Matter of Ludwig v Reyome, 195 AD2d 1020, 1021). Here, respondent was responsible for the circumstances leading to the loss of his teaching license and voluntarily left his brief employment at the manufacturing facility [claiming the work hurt his back]. Furthermore, he has not put forth any persuasive proof that he has engaged in reasonable and sincere efforts to secure employment so that he could contribute to his child's support. Consequently, his petition for downward modification was properly dismissed."